Mr. Chief Justice Johnson delivered the opinion of the Court. The only question raised by the assignment of errors relates to the propriety of the decision of the Circuit Court in holding that the demand sued upon was a lien upon the boat. The decision of this question will necessarily depend upon the construction which shall be placed upon our statute in relation to steamboats, &c. The ls¿ sec. of ch. 18, Dig., provides that “boats and vessels, of all descriptions, built, repaired or equipped, or running upon any of the navigable waters of this State, shall be liable for all debts contracted by the owners, masters, supercargoes or assignees on account of all work done, or supplies, or materials furnished by mechanics, tradesmen, or others, furnishing or equipping such boats or vessels, their engines, machinery, sails, rigging, tackle apparel and furniture, and such debts shall have the preference of all other debts due from the owners or proprietors, except the wages of mariners, boatmen, and other’s employed in the service of boats and vessels, which shall be first paid.” If the construetion contended for by the appellee be correct, it must be that such claims are contemplated by and included in the term “equipping,” as it cannot possibly be comprehended under any other expression used in the statute. The Supreme Court of the State of New York, in the case of Johnson vs. Steamboat Sandusky, (5 Wend. R. 510,) have given a judicial interpretation of every material expression contained in our statute. That Court (Sutherland, J.) said: “The object of the act was to give a preference to a particular class of debts incurred in the building and equipping of vessels, and not to give a general lien for all advances made for the benefit of the owners in respect of the vessel. It would hardly be contended that the butcher, or baker, or grocer, who supplied a steamboat, would have a lien under this act. The supplies contemplated by the act, it appears to me, must be such as enter into the construction or equipment of a vessel and become a part of her, and not such articles as are daily consumed and constantly l’eplaced. They must be such as go towards the building, repairing, fitting, furnishing or equipping a vessel; and although fuel is as necessary to propel a steamboat as sails are to an ordinary vessel, still there is a manifest distinction in the nature of the two articles, which seems to me to bring the one within the operation of this act and exclude the other.” The same Court, in the case of Crooke & Fowke vs. Stark et al., said : “ In Johnson vs. Steamboat Sandusky, (5 Wend. 510,) the Court would, I think, have embraced wood within the term “ supplies,” used in the act of 1798, 1 R. S. 130, had it not been for the connection, which seemed to confine it to such articles as enter into the construction or equipment and become a part of the vessel itsel. To avoid this difficulty, the language has been varied and transposed in the Revised Statutes, and this case is, therefore, taken out of the authority of that above cited.” ' 1 Independent of these authorities, which are directly in point, and would seem to be conclusive of the question, the act itself, upon a close and critical examination, will be found to contain a plain a.nd direct denial of the doctrine contended for by the appellee. The act declares that debts contracted for supplies or materials furnished, &c., shall have the preference of all other debts due from the owners or proprietors, except wages of mariners, boatmen, and others employed in the service of the boats and vessels, which shall be first paid. The wages of mariners, boatmen, and others employed in the service of the boats and vessels, are expressly placed in a different class from that of supplies or materials, and are given a preference over them, and consequently cannot be said to be identical with them. It is clear, therefore, that Levy had no lien upon the boat as having furnished supplies or materials for any of the purposes specified by the act, and that, consequently, he could not maintain a proceeding in rem for his demand. It is admitted that the hands, who had performed service upon the boat, were entitled to a lien, and that had they elected to do so, they could have proceeded against the boat by a direct proceeding, and have subjected her to the payment of their just demands. This, by no means, proves, however, that a mere stranger could come in, and, by releasing the boat from the lien that had attached in favor of the hands, legally claim to be subroga-ted to their rights. Levy was a mere volunteer, under no legal obligation to discharge the debts of the boat, and, consequently, upon no principle, either of law or equity, could he claim to be subrogated to the rights of her creditors. ' We think it clear, therefore, that in no view of this case could Levy be said to have a lien upon the steamboat for his demand. The counsel have raised other points in the argument; but inasmuch as the one already settled, disposes of the whole case, we do not conceive it necessary to prosecute the investigation any further. The judgment of the Circuit Court of Pulaski county, herein rendered, is, therefore, for the error aforesaid, reversed, and the cause remanded to be proceeded in according to law and not inconsistent with this opinion.